## TULCHIN v. PEREY MFG. CO. et al.*

### No. 126.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1937.

AUGUSTUS N. HAND, Circuit Judge, dissenting.

Armand E. Lackenbach, of New York City (Armand E. Lackenbach and Hans v. Briesen, both of New York City, of counsel), for appellant.

Walter H. Pumphrey, of New York City (Maxwell James, of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff is the patentee to whom patent No. 1,726,779 for a turnstile was issued September 3, 1929, and reissued to him on September 29, 1931, in reissue patent No. 18,211. He sued on claims including 24 to 27, inclusive, of the reissue, which were the new claims so secured and the only ones actually relied on.

They read:

"24. A turnstile including a head, barrier arms extending outward from and to one side of the face of said head, means retaining said barrier arms in planes that include the axis of said head and with equal angular intervals between them, and an oblique pivot axis supporting said head at a fixed angle such as to dispose one of the arms in passage guarding position.

"25. In a turnstile a head, an oblique pivot mount therefor, barrier arms extending outward from said head each at an angle with respect to and in a plane common to said pivot axis, the axial planes of said arms being at equal angular intervals, the angle of inclination of said pivot axis being at least as great as the acute angle of inclination of the barrier arms with respect thereto.

"26. A turnstile as claimed in claim 25 in which the angle of inclination of the pivot axis is forty-five degrees.

"27. A turnstile including a head, an oblique pivot axis therefor, barrier arms extending outward from said head each disposed at an acute angle with respect to said pivot mount, all said arms disposed toward one side of the plane of said head, means maintaining said arms in planes at equal angular intervals with respect to each other, said head including means for advancing each arm to passage guarding position as the preceding arm is pushed out of passage guarding position."

The defendant Perey Manufacturing Company is a manufacturer of turnstiles.

who made those claimed to infringe and the other defendant was shown to have purchased and used such Perey turnstiles. The defenses are invalidity because of anticipation and because the reissue itself is invalid and also noninfringement.

The patent relates to turnstiles used to permit the passage of one person only during one movement of the rotating head to which the arms are attached and especially to a form which may be used where space economy is needed as in street cars, busses, or against walls.

It is contended that the patentee was the first to disclose a space-saving turnstile which made use of "an angularly inclined pivoted support or head for the barrier arms which, in turn, are so connected with the inclined head that they cannot be moved out of the plane which they have in common with the axis of rotation of the head." And, if there is anything which Tulchin invented and disclosed, it is that construction. All else about his turnstile certainly was old.

His preferred form had a rotating head mounted on a pivot obliquely so that the angle of inclination of the pivot axis would be forty-five degrees or "at least as great as the acute angle of inclination of the barrier arms with respect thereto"; coupled with quadrant plates which formed guideways in which each barrier arm could move in a plane axial of the head but was held at all times in a plane at right angles to the plane of rotation of the head; and having the barrier arms attached to the head with universal mountings constrained in part by the guideways so that they could successively be pushed out of and into barrier position by force exerted on the guarding arm and through that to the head, as, for instance, when a person went through the passage controlled by the turnstile. The universal connection by which each barrier arm was attached to the rotating head allowed that arm to drop down by force of gravity as soon as it was pushed over the top of a ledge formed by the front wall of the enclosure of the turntable mechanism. Then, as the turning movement was continued by horizontal pressure against the following arm which had been moved into barrier position, the dropped arm turned with the rotating head and continued to turn as each barrier arm was successively moved until by camming action, in which the above-mentioned front wall played its part,

the arm came again into barrier position and was there supported again by the top of the front wall. Such a construction made it possible to install the turnstile without requiring as much space as would be taken by one having the same size of head and arms with the arms and head turning in a plane at right angles to the axis of rotation. Though the patentee used a universal connection to join the arms to the rotating head, this joint was made in part inoperative by the quadrant guideways which so held the arms that they were in fixed angular relation to the head except in respect to the permitted up and down arcuate movement in the guides at right angles to the plane of rotation of the head. Thus the universal connection was so circumscribed that it became in fact a pivotal connection which was all that was required anyway. The preferred number of barrier arms was four, but it was suggested that more or less might be used.

The patentee is a man of limited means who had considerable difficulty in financing his patent application and the prosecution of it to secure his grant. He tried to interest the defendant Perey Manufacturing Company in his turnstile both before and after his patent issued and explained it to Perey officials but apparently to no purpose. His efforts to interest the New York Rapid Transit Corporation seemed more successful but even so were without result except to inspire Tulchin to make a full-sized model which he completed in 1931 and took in February to the president of the Perey Company with whom he left it a few days, at the end of which he returned and talked with the president and Perey officials suggesting that, if his patented turnstile were used, he would prefer to have a royalty arrangement. He heard nothing more from either defendant, but during the next month heard that a turnstile built according to his patent was in use on a bus in Brooklyn. He finally found it and reported that to his attorneys, who wrote the Perey Company on March 5, 1931, saying that the turnstile "appears to be a clear infringement upon claims 4 and 5, and possibly upon additional claims, of our client's U. S. Letters Patent No. 1,726,779 of September 3, 1929," and demanding that infringement be stopped and an accounting made.

It replied that the turnstile was merely experimental; that neither it nor any sim-

ilar ones had been sold; that it was not thought to infringe plaintiff's patent, but that "we are sending copy of your letter together with the patent to our patent attorney and, as soon as we have an opinion from him, we will be glad to take the matter up with you further." But nothing came of this except a suggestion to the plaintiff by his attorney that it would be well to take advantage of the right he had to secure a reissue of his patent to obviate any doubt about its covering the Perey experimental turnstile. The application for reissue was filed in July, 1931, and brought in the claims in suit as before stated. On October 16, 1931, a copy of the reissue was sent the Perey Company, with a notice to desist infringement.

In the meantime the claimed infringement had been developed by Edward J. Kennedy and John F. Perey, who applied for a patent March 30, 1931. Their application was granted January 12, 1932, to the Perey Manufacturing Company as assignee. It had built and sold a considerable number of the accused turnstiles when this suit was brought on May 18, 1934.

The defendant's turnstile has a rotating head to which a plurality of barrier arms, preferably three, are rigidly attached in fixed angular relation spaced equidistant from each other. The head turns in a plane at an oblique angle to the axis of rotation and the arms extend outwardly from the head at an angle which offsets whatever the angle of inclination of the plane of the head may be to its axis of rotation so that, when any arm is in barrier guarding position, it will be disposed across the passage in "a position at right angles to the length of the passage controlled by the turnstile and effectively bar entrance through the same." This construction has the advantage of simplicity combined with space saving, in that the inclined arms move about the axis of rotation of the head of which they are in fact an integral part in a conical plane and are yet so spaced apart from each other that, when an arm in guarding position is effectively blocking the controlled passage, no other arm is in the way of a person going through. Such turnstiles infringe the claims in suit, if those claims are valid, in that they have a rotatable head which turns in a plane inclined obliquely to the axis of rotation and barrier arms each extending outwardly to one side of the head

and held in fixed angular relation to the plane of the head and to each other. They include only a portion of the plaintiff's patented structure, it is true, since there is no up and down movement in a plane passing through the axis of rotation of the head, but nevertheless the heart of the plaintiff's invention, if he made any, has been appropriated.

We cannot agree with the court below that the reissue patent is invalid because of delay in applying for it. The application was within two years of the grant of the original patent surrendered and should not be held invalid unless it appears that there was lack of reasonable diligence in discovering the inadvertence or mistake, or in applying for the reissue after such discovery, or that one or more third persons have acquired intervening rights. While in respect to reissues which result in enlarged claims there is more likelihood that rights of third persons have come into existence and, perhaps, that fraud rather than honest mistake lies at the basis of the application, the right to such a reissue upon a proper showing is recognized, though in such instances "the rule of laches should be strictly applied." See Miller v. Brass Co., 104 U.S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665. Keeping this in mind, we find in Topliff v. Topliff, 145 U.S. 156, 12 S.Ct. 825, 36 L. Ed. 658, the guide to a correct decision as to the validity of this reissue. It is for the same invention as the original patent "as such invention appears from the specification and claims on such original." The specifications and drawings are the same in both and the claims in the original, especially claim 4, are opposed to the idea that anything but inadvertence or mistake will account for the failure to claim the invention as broadly as it was claimed in the reissue. So the decision of the Commissioner upon the question of inadvertence, accident or mistake is to be accepted. That leaves only delay in the application for the reissue as a possible ground of invalidity. As to that it is to be noted that the application was filed not only within two years but before the defendant Perey Manufacturing Company, the only third party who is shown to have possibly acquired any intervening rights, had done more than make and use one experimental turnstile. Even that was made when the plaintiff had fully disclosed

his invention to that defendant and, before it on its own admission had done more, it was fully advised that the plaintiff claimed that his invention was embodied in the experimental turnstile. In view of all this, we find no laches in applying for the reissue.

Nor do we find in this record enough to show anticipation of the gist of the plaintiff's invention, viz., a rotatable head carrying the barrier arms which is mounted on the oblique axis with the barrier arms all in fixed angular relation thereto and to each other so that there can be no movement of any arm except in planes axial of the head.

The nearest approach to anticipation, and the only one which needs serious consideration, is found in the German patent No. 336,361 issued to Lambertsen May 9, 1920. It has a rotatable head mounted obliquely to the axis of rotation in which there are slots that hold the intermediate portion of bars whose ends form the barrier arms; two such bars providing four arms. These bars, so extending through the head and attached to it, turn with the head as it turns and their ends successively come into barrier position where they are disposed horizontally across the guarded passage, since the bars are bent so as to offset the angle of inclination of the head. But they are designedly made to move out of the plane they have in common with the axis of the tilted head. This is to keep the next succeeding arm out of the way of a person entering the guarded passage to meet the barrier arm. As Lambertsen had four barrier arms, it was necessary to have them all lag a little as they followed the guarding arm into barrier position for the reason just given. He contrived to do this by having the bar forming the arm just ahead and that just behind the barrier arm in guarding position moveable in the plane of the axis of the tilted head so that gravity would hold the following arm back a little and out of the passage while an arm rested in guarding position. As one of the defendants' witnesses truly admitted: "No, there is nothing in the Lambertsen structure as shown in his patent which tells you to preserve the same angular relation as between the axis of rotation and the arms as they extend therefrom." It has been suggested that the Lambertsen arms may be so attached to the head that

there will be none of this lagging movement, and that is so, but it is also true that, if that is done, the turnstile will lack one of the essential features Lambertsen put into it. He taught just such a movement of the arms as the suggestion would do away with while Tulchin taught the opposite. And so Lambertsen does not anticipate. Seymour v. Osborne, 11 Wall. 516, 20 L.Ed. 33; In re Dann (Cust.& Pat. App.) 47 F.(2d) 356; Carson v. American Smelting & Refining Co. (C.C.A.) 4 F.(2d) 463; In re Gillam (Cust. & Pat.App.) 37 F.(2d) 959.

Decree reversed, with directions to enter a decree for the plaintiff conforming to the views herein expressed.

AUGUSTUS N. HAND, Circuit Judge (dissenting).

While no anticipation of the patent in suit is found in the prior art, Tulchin in making his turnstile followed generally the old drop-arm type and, I believe, consciously departed from the prior structures only in detail. A considerable number of drop-arm turnstiles had been patented, but apparently none met with any commercial success or even went into use. The plaintiff has not manufactured or sold any turnstiles made under his patent. The advantage of the defendant's structure which has met with substantial success is, I think, due to the fact that the arms are rigidly attached to the rotatable head and rotated in a plane sufficiently out of the horizontal so that they occupy little lateral space. It was the first to put any such device on the market.

If the Tulchin patent has any novelty, it is because the barrier arms are kept by the guideways in a plane passing through the axis of rotation of the head. This is true of the particular barrier arm that bars the entrance to the turnstile shown in the German patent to Lambertsen, and in that patent also the head is mounted obliquely to the axis of rotation. In Lambertsen's device slots were inserted in the head to hold each barrier arm in position as it came up to bar the entrance to the turnstile. These slots, like the shelf in the wall shown by Tulchin, furnished support for the barrier arm which closed the entrance. The remaining arms not immediately needed to bar the gateway like the corresponding arms in the patent in suit dropped out of the way and until they

306

came up again occupied no lateral space. The difference between Tulchin and Lambertsen is that the latter had no guideways like Tulchin's to keep these arms in the plane of the axis of rotation of the head. But in neither device did it make any difference in what plane the bars which had dropped down so as to be out of the way were rotating. While it may have been more desirable to have those arms carried in a fixed plane to the axis of rotation, they were for the time being but an unused element in a mechanism which had never got beyond the stage of a paper patent.

The defendant Perey Manufacturing Company did not save space by the use of a drop-arm turnstile, but has manufactured one with arms rigidly attached to the rotatable head. In its structure three arms thus rigidly affixed and moving in a plane passing through the axis of rotation of the obliquely mounted head take the place of the drop arms pivoted on an obliquely mounted head shown in the patents of Lambertsen and Tulchin. Tulchin has followed the teachings of Lambertsen and in general other designers of drop-arm turnstiles, while defendant has employed an entirely different device. Neither Lambertsen nor Tulchin thought of the use of bars rigidly attached to an obliquely mounted rotating head. That was the useful contribution of defendant's turnstile to the art. The obliquely mounted head was already shown in the Lambertsen patent. Tulchin's idea of keeping drop arms in a fixed plane by means of his guideways was a conception adapted for use with drop arms. It in no way embodied the notion that rigidly attached arms would be employed or set at a fixed plane to the axis of rotation, though such rigidly attached arms if used would inevitably be set at a fixed plane. The novelty was in Lambertsen, who first used an obliquely set rotating head.

The quadrant plates of Tulchin set at a fixed angle to the rotating head were a substitute for the cams of Lambertsen. Defendant, casting aside both cams and quadrant plates, attached the barrier arms to the head rigidly. An obliquely set head was not new. The combination described in Tulchin's patent involved drop arms and in no way suggested such a structure as defendant employs. In view of Lambertsen and other designers of turnstiles of the prior art, Tulchin should be confined to the sort of structure his

patent shows. If so limited, defendant does not infringe. Accordingly, I think the decree should be affirmed.