732

## HOLLYWOOD COMB CURLER, Inc., v. GLEMBY CO., Inc., et al.

·District Court, S. D. New York.

Oct. 5, 1942.

Hornidge & Dowd, of New York City, and Collins Mason, of Los Angeles, Cal., for plaintiff.

Mock & Blum, of New York City, for defendants.

BRIGHT, District Judge.

This action is brought for an alleged infringement of claims 11, 12, 13 and 15 of the Visitacion reissue patent No. 21,-117 and of the single claim of the Wallace & Leisy patent No. 2,156,073. Both of these relate to hair curling devices, the latter covering an alleged improvement of the former. Both concededly are owned by plaintiff.

The original Visitacion patent No. 2,-132,500 was applied for on May 25, 1937, and issued on October 11, 1938. A stated object of that invention, among others, was to make a hair curling implement to which the ends of the hair could be secured upon a tubular mandrel and thereafter curled by winding the hair, the curl thus formed being released by drawing the mandrel lengthwise and becoming engaged between the prongs of a bobby pin carried in the end of the mandrel in open position. It is further stated that the hair curler would be made wholly of one piece of material, having no additional attached or detached parts save the bobby pin. The device had two arms, one long and the other short, integral with the body of the implement. The long arm or mandrel carried the bobby pin. The hair was to be inserted between the long and short arms, and the entire device was then to be wound around forming the curl. This patent showed a spring between and extending from one arm to the other, the purpose of which was to hold the strands of hair during the winding operation, and all of the original patent claims included such spring. Obviously, the patent was designed to cover a device which could be cheaply manufactured, of simple operation, and to do away with the necessity of leaving the curling apparatus in the hair until the curl set. After the winding operation described, the curl when formed was pushed off the device into and between the open prongs of the bobby pin, which clamped onto the curl holding it in shape and at the same time keeping it in position on the head.

The reissue patent was applied for on January 7, 1939. It broadened to some extent the original patent by making additional claims which did not include the spring between the two arms, but otherwise did not materially change it.

The Wallace & Leisy patent was applied for on June 13, 1938, and issued on April 25, 1939. The patent drawings show a comb with two arms, one long and the other much shorter, all moulded into one piece. A bobby pin is carried in the end

of the longer arm, in the end of which is, a concave cavity or groove which is adapted to take one leg of the pin. This groove extends around the end of the long arm and a short distance upon its upper face so that when the pin is inserted its two legs or prongs will be spread open and one will extend at a substantial angle to the upper surface of the long or curling arm. The shorter arm is made of such a length that it will define the width or zone of the curl so that the bobby pin will be entirely outside of the curling zone and will not interfere in the forming of the curl during the winding operation, which is performed in the same manner as outlined in the Visitacion reissue.

Plaintiff claims that the invention and novelty in the two patents consist in that there is but a single piece to the entire device, with a bobby pin in the long arm; that the curl formed around the two arms, and not in any way over or around the bobby pin, is then slipped into the pin carried clear of the curling zone; and the device can be economically made, and operated simply by any one.

The device claimed to be infringed is in the shape, on one end, of an ordinary comb with the two arms mentioned, the longer arm carrying the bobby pin opened as specified, the comb portion being used as the handle during the curling operation. This comb, the combination of the two patents, was shown to have had immediate commercial success.

The accused comb, so far as could be accomplished, is an exact counterpart of the plaintiff's comb, with the exception that the bobby pin is carried in the end of the longer arm in a cavity instead of a groove. Defendants sold the accused article. It was manufactured by William Finkelstein, the patentee and manufacturer of the Pro-Curler later mentioned, who, after he had seen plaintiff's device on the market, obviously made the accused comb to compete with it and to recoup thereby the profits which he had lost from the sale of the Pro-Curler, which undoubtedly were reduced by the advent of plaintiff's product. I have no hesitancy in finding that the accused comb infringes plaintiff's.

■ I think the plaintiff is entitled to recover. The article infringed has, in my opinion, patentable novelty. In fact I do not think that is squarely denied by defendants. Their contention is, not that the device lacks invention, but rather that the invention was Freeman's, who was also the inventor of the Pro-Curler. But defendants and the manufacturer of the accused comb copied plaintiff's device, not Freeman's.

Freeman applied for the Pro-Curler patent No. 2,039,789 on October 19, 1935, and obtained it on May 5, 1936. That patent was upheld by the Circuit Court of Appeals in this Circuit in Finkelstein v. S. H. Kress & Co., 113 F.2d 431. That patent is not the one, however, which defendants now contend shows prior invention. After the Pro-Curler patent was applied for Freeman, on September 16, 1936, applied for a second patent on hair curlers. It was not issued until April 7, 1942, long after this suit was started. It is No. 2,278,541. That patent was to devise certain improvements over his previous patent No. 2,039,789. It added, however, another embodiment of his claimed invention, which was a single tube with a bobby pin in the end, quite similar to the device patented by Visitacion, except that Freeman showed a pivotally connected clamping member, connected to the tube by a pivot pin, to hold the hair while the curl was being formed, which Visitacion did not have.

It will be observed that Freeman's second patent application was filed on September 16, 1936, and Visitacion's on May 25, 1937. The corroborated testimony shows, however, that Visitacion was working on hair curlers as early as June, 1935, and had made three models, Exhibits 13, 14 and 15, had drawings prepared, and had submitted the models and drawings to a patent attorney before September 16, 1936, and had used the models in making curls on a living person as well as upon a wig. The making of the models, their exhibition and the preparation and submission to the patent attorney was amply corroborated. Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358–382, 48 S.Ct. 380, 72 L.Ed. 610; Corrugated Paper Patents Co. v. Paper Working Mach. Co., D.C., 237 F. 380–385. The models and drawings clearly show that Visitacion conceived the invention and reduced it to practice before Freeman's application date. Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049; Corona Cord Tire Co. v. Dovan Chemical Corp., supra, at page 383 of 276 U.S., 48 S.Ct.

380, 72 L.Ed. 610; Coffin v. Ogden, 18 Wall. 120, 85 U.S. 120, 21 L.Ed. 821.

It is urged that plaintiff's curler was anticipated by the Bagshaw patent No. 417,-462, issued December 7, 1889, for mustache curler tongs; and by Freeman's patent No. 2,039,789, applied for October 19, 1935, issued May 5, 1936, for the Pro-Curler.

The Bagshaw patent was for tongs to curl mustaches so prevalent in the "gay nineties". They were to be heated, the hair of the mustache inserted between the tongs, the curl then to be formed by rotating and held until the heat would fix the curl. No bobby pin was involved (and probably had not then been heard of), and there was no teaching in that regard. So far as appears here it was but a paper patent, and one which could not be useful for the purposes for which plaintiff's curler was designed.

The first Freeman patent was not copied by the infringing comb, but rather the Visitacion curler as improved by Wallace & Leisy. This patent was cited and considered by the Patent Office during the prosecution of both of plaintiff's patents. J. A. Mohr & Son v. Alliance Securities Co., 9 Cir., 14 F.2d 799, 800; Einson-Freeman Co. v. International Box Co., D.C., 21 F.2d 701–703. It does not show the combination of elements of the patent claims in suit, because it obviously employs several movable parts, with hinges and joints which may injure the hair, the bobby pin is in the curling zone, it cannot be rotated as a whole in winding the curl, and it utilizes a spring pressed clamping bar which must be operated before and after curl formed and which also may injure the hair.

To paraphrase the words of Judge Augustus N. Hand in Finkelstein v. S. H. Kress & Co., supra, at page 433, of 113 F.2d, it would seem that plaintiff's patents are valid beyond doubt in view of the presumption attending the granting of the patents, the absence of any anticipation in the prior art, the failure of the defendants to dispute that they involve inventions, and their obvious imitation and copying of plaintiff's device. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428–433–441, 31 S.Ct. 444, 55 L.Ed. 527; Boyce v. Stewart Warner Corp., 2 Cir., 220 F. 118–126; Kurtz v. Belle Hat Lining Co., 2 Cir., 280 F. 277–281.

But, say the defendants, the reissue patent is void because it is for a new invention, and the point of their contention is that the original patent was only for a curler with a spring between its two arms for clamping the hair, whereas the reissue was for a device with or without such spring. The testimony uncontradictedly shows that in two of the Visitacion models and one of his drawings, made before his patent was applied for, no spring was shown. His invention clearly contemplated curlers with and without springs. He says, and is not contradicted, that he requested his attorneys to obtain such a patent, and did not know, because of his insufficient knowledge of English, that such a patent had not been applied for until his attention was called to the fact after the patent was issued. Within three months thereafter he applied for the reissue. A comparison of the original and reissue will show that the drawings are identical, as are the specifications to line 60 of the second page, as are also claims 1 to 7, inclusive. The clause, frequently seen, is there found, by which the patentee does not desire to be limited to the details specifically mentioned, "since changes and modifications may well be made without departing from the spirit or scope of the invention". The spring is not claimed as an essential, and obviously is not as proven by the large sales of the device in suit without the spring and by the fact that the early model was operated without a spring. It was not deemed an essential in the original conception of one form of the invention. And the prime objects of the invention, to which attention was directed at the outset, do not include the spring. The reissue did not leave out what had been deemed essential in the original patent, as was the case in United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corporation, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105. The validity of the reissue was before the Patent Office whose ruling in its favor is of some significance. Smith v. Goodyear Dental Co., 93 U.S. 486–499, 23 L.Ed. 952. I think the allowance of the reissue was within the terms of the statute, 35 U.S. C.A. § 64, authorizing it where, as here, there was clear inadvertence and mistake without any fraudulent or deceptive intention. Topliff v. Topliff, 145 U.S. 156–171, 12 S.Ct. 825, 36 L.Ed. 658; Tulchin v. Perey Mfg. Co., 2 Cir., 87 F.2d 302–304, certiorari denied 300 U.S. 674, 57 S.Ct.

613, 81 L.Ed. 880; Gallahue v. Butterfield, Fed.Cas. No. 5,198. It seems probable to me that if this court were to decide whether a device shown by the original patent with a spring was infringed by a similar device without a spring, it would not hesitate to find an infringement and to hold further that the latter was not a patentable invention over the one with the spring. The operation is the same, with or without the spring.

The contention as to the reissue, of course, can have no bearing on the Wallace & Leisy patent.

█ And finally defendants contend that the reissue is not available here because of intervening rights created by the making of the Solo curler, under the British patent No. 465,659 issued to Solomon May 11, 1937, the application date in the United States being November 14, 1936, and the Presto-Matic curler, adjudicated upon in Finkelstein v. S. H. Kress & Co., supra.

Here again it is to be noted that this contention does not involve the Wallace & Leisy patent. And it is doubtful if the Presto-Matic device is in evidence but I am assuming that it is. The question of their rights is not asserted by Solo or Presto-Matic, their owners or licensees. They have no application to the accused device which does not copy or purport to copy either. In fact the card and advertising matter under which it was sold claims under the first Freeman patent No. 2,039,789 for the Pro-Curler.

This would seem to be a sufficient answer to the defendants' claim of intervening rights.

However, aside from this, I am convinced there is no merit in the contention. The Solo patent was not considered pertinent by the Patent Office. If that device were rotated as a whole, the curl would be wound around the hair pin, a construction and operation entirely foreign to the invention infringed. The Presto-Matic is even more foreign. The arm holding the hairpin is not the curling mandrel but is pivotally connected to the curler. The clamp arm rotates in the mandrel, possibly to the detriment of the hair; and the device cannot be rotated as a unit. They do not infringe the plaintiff's device. Neither device was misled by the original Visitacion patent because they were made before it issued, and they have not been made within the scope of the reissue. Nor were defendants misled. They copied plaintiff's curler, and they did it after that curler went on the market, and after application was made for the reissue. City of Milwaukee v. Activated Sludge, 7 Cir., 69 F.2d 577–592, certiorari denied 293 U.S. 576, 55 S.Ct. 87, 79 L.Ed. 673. Nor can defendants claim under the second Freeman patent. They do not make or sell curlers under it as I have shown.

Accordingly, the decree will go for the plaintiff, with costs. Findings may be submitted to the court by plaintiff and served upon defendants' attorneys within ten days from this date. Defendants may have five days in which to object to any thereof. The final findings and conclusions will thereafter be made by the court.