## SIEBERT CYLINDER OIL CUP CO. *v.* HARPER STEAM LUBRICATOR CO.

*(Circuit Court, D. Connecticut.   October 25, 1880.)*

1. RE-ISSUE—NEW MATTER. — A device was patented as for a lubricator acting by steam pressure.   Subsequent investigation led to the conclusion that, although steam rendered slight assistance, hydrostatic pressure was the active agent.   Thereupon a new arrangement of parts was made in which the latter principle only was used, and the second device was patented.   *Held,* that the patentee could not subsequently obtain a re-issue of the first patent which would cover the method of feeding a lubricant by means of hydrostatic pressure alone, operating through devices substantially as shown.

2. SAME—SAME—DEFINITION.—By new matter is meant "new, substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent."
    *Powder Co.* v. *Powder Works,* 98 U. S. 126, followed.
    *Yale Lock Manuf'g Co.* v. *Scovill Manuf'g Co.,* 3 FED. REP. 218, distinguished.

*A. H. Evans,* for plaintiff.

*Henry T. Blake,* for defendant.

SHIPMAN, D. J.    This is a bill in equity to restrain the defendant from the alleged infringement of re-issued letters patent, which were issued on June 3, 1879, to Nicholas Siebert for a lubricator of steam-engines.   The original patent was issued September 14, 1869.

The device, which is described and claimed in the re-issue, is clearly explained by General Ellis, the plaintiff's expert, as follows:

"This device is an improvement in lubricators.   It consists of a horizontal cylinder, in which transverses a piston, to one side of which is attached a piston-rod, which passes through

the end of the cylinder, and serves as a gauge to indicate the position of the piston at the end of the cylinder.  On the opposite side of the piston head is an opening, to which is connected a vertical pipe, between which vertical pipe and the cylinder is a three-way cock connecting with cylinder, vertical pipe, and discharge pipe.  At the opposite end of the cylinder is a pipe, furnished with a cock, leading to a point at which the lubricating material is to be delivered.  On the top of the cylinder is a feeding cup, likewise furnished with a cock for pouring in the lubricant; likewise, on top of the cylinder, is a small cock for allowing the air to discharge when the lubricant is poured in.  The operation of this machine is as follows:

"The piston being pushed to the rear end of the cylinder, the lubricant is poured in to fill it upon the front side, or that which is furnished with the piston-rod.  The pipes at the two ends of the cylinder are supposed to be submitted to an equal pressure from the steam.  The vertical pipe at the rear end of the cylinder becomes filled with water from the condensed steam, the hydrostatic pressure from which, as it enters the cylinder, pushes the piston forward and expels the lubricant. On the rear side of the piston there is steam pressure added to the hydrostatic pressure of the water which condenses in the vertical pipe.  On the front side of the piston there is the pressure only of the steam and the atmospheric pressure upon the small area of the piston-rod, which serves as a gauge. This makes an excess of pressure upon the rear, due to the hydrostatic column in the vertical pipe, which presses the piston forward and drives out the lubricant through the discharge pipe."

The claims of the re-issue are as follows:

"*First.* The arrangement of a cylinder, A, provided with a piston, B, and pipe, N, substantially as described, whereby the lubricant is fed by means of hydrostatic pressure or steam pressure, or both.

"*Second.* The cylinder, A, pipe, N, and cocks, G and H, arranged substantially as described, whereby the lubricant may be fed by hydrostatic pressure.

"*Third.* The method herein described of feeding a lubricant by means of hydrostatic pressure operating through devices substantially as herein shown and explained."

The second and third claims only are said to have been infringed.

The defendant's device has a vertical instead of a horizontal cylinder, has no piston, but the oil and water are separated by the difference of their specific gravities. I assume, what is denied by the defendants, that the principle of its device is solely that of hydrostatic pressure. It may also be assumed that Siebert first introduced this principle in an automatic oiler of steam-engines. The important question in the case seems to me to be the validity of the second and third claims of the re-issue, if those claims are to receive the construction which would naturally be given to the language which is used.

When Siebert applied for his original patent in 1869 he was manifestly ignorant that the principle of hydrostatic pressure was contained in his device. This is manifest from the entire specification, which attributes the action of the piston, in forcing the oil through the delivery cock, entirely to the pressure of the steam admitted through the cock at the base of the verticle pipe. For example, the patentee says: "A cock admits steam behind the piston, and forces it slowly forward, while another cock, at the opposite end of the cylinder, allows the tallow to pass to its destination. At the back of the cylinder is the cock, G, which admits the steam, by the pressure of which the piston is forced along." There is no mention in the claim of the vertical pipe, or of hydrostatic pressure. Indeed, the vertical pipe did not appear in the drawings, though it was shown in the model. Subsequent investigations having led Siebert to discover, in May, 1879, the value of hydrostatic pressure, "he caused to be made a new arrangement, by which the lubricant reservoir was made to stand vertically, instead of horizontally, as in his first invention, and hydrostatic pressure was applied near its base, at the bottom of the lubricant. For this arrangement he took out his patent of February, 1871. The princi-

ple was manifestly the same as that revealed in the earlier patent, though the arrangement for its operation was different." *Garratt* v. *Siebert*, 98 U. S. 75.

After the patent of 1871 had been granted, the patentee sought and obtained a re-issue of the patent of 1869. The re-issue described the invention as follows: "My invention consists in a novel method of feeding the oil to the cylinders, said feed being accomplished by means of hydrostatic pressure, operating through devices substantially as herein described. In the general mode of feeding oil to cylinders, the opening through which the oil passes to the valves or other parts is the only point where the lubricant is exposed to the effect of the steam pressure, and the oil is subjected to constant ebullition, and an irregularity of feed is a necessary result. If steam can be applied on each side of the body of the lubricant, so as to produce a state of equilibrium, and then some constant and regularly-augmented power be brought into operation to disturb this equilibrium in one direction, the oil will be forced in that direction, and be supplied with a regularity depending upon the regularity of the augmentation of the power used to disturb the equilibrium of the steam pressure on the lubricant. One of the powers I use to disturb the steam equilibrium is a hydrostatic column, formed by the condensation of steam in an extended pipe, to form one of the steam connections, to create the equilibrium before mentioned."

Again he says: "The steam, becoming condensed in the pipe, N, forms a hydrostatic column behind the piston, and this column, acting in conjunction with the steam in pipe N, overcomes the pressure from pipe M, and the piston is forced slowly and regularly in the direction of the arrow, thus giving a constant and regular feed of the lubricant through the supply pipe, M, and the continued condensation of the steam regularly augmenting and supplying the hydrostatic column."

The testimony shows that the active principle for expelling the lubricant from the cylinder is the hydrostatic column in the vertical pipe, and that steam aids hydrostatic pressure to this small extent: "Upon the rear side of the piston the

steam exerts a pressure upon the whole area; upon the front side of the piston the steam exerts a force upon the whole area, less the area of the piston-rod, upon which small area is only exerted the pressure of the atmosphere. Therefore, steam of greater than atmospheric pressure would assist in driving the piston forward, and expelling the lubricant by this small difference."

There is, however, some slight assistance by the force of steam. It will be observed that the specification acknowledges steam as one of the propelling forces.

This is the state of the facts: The patentee had invented a lubricator, the efficient agent in which was the pressure of steam, as he supposed. The device was patented as for a lubricator acting by steam pressure. Subsequent investigations led him to the conclusion that although steam rendered slight assistance, hydrostatic pressure was the active agent. He made a new arrangment of parts in which the latter principle only was used, and the second device was patented. The patentee now seeks, by a re-issue of the first patent, to obtain a patent from 1869 which shall cover the method of feeding a lubricant by means of hydrostatic pressure alone, operating through devices substantially as shown.

It is not contended that the patentee has not a right to introduce in his re-issue the vertical pipe which had been left out of the drawings, and to claim that arrangement of all the parts of his device which he actually invented, whereby the lubricant was fed by hydrostatic pressure or steam pressure, or both; in other words, the first claim of the re-issue. But it is insisted that an introduction into the claims of matter which discards steam pressure, with the piston, as an agent for feeding the oil, and thus changes the nature of the invention which was originally applied for, is an introduction of new matter. I am of opinion that the last two claims, if construed in any other way than by such limitations as shall confine them to the mechanism specified in the first claim, substantially as described, are, under the recent decisions of the supreme court, an undue enlargement of the original patent.

The additions come within the definition of new matter in *Powder Co.* v. *Powder Works*, 98 U. S. 126: "By 'new matter' we suppose to be meant new, substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent." The point is not whether means for the application of the principle of hydrostatic pressure had not been invented by Siebert, and whether he had not mistaken the nature of his invention when he applied for a patent, but it is whether it is proper for him to introduce into the claims of the re-issue a somewhat different invention from that which he had made when the original patent was granted; for it cannot be forgotten that the invention which he actually made was a lubricator by hydrostatic and steam pressure, though it is true that hydrostatic pressure was the active principle and was "revealed" in the invention.

"The legislature was willing to concede to the patentee the right to amend his specification, so as fully to describe and claim the very invention attempted to be secured by the original patent, and which was not fully secured thereby in consequence of inadvertence, accident, or mistake; but was not willing to give him the right to patch up his patent by the addition of other inventions, which, though they might be his, had not been applied for by him, or, if applied for, had been abandoned or waived. For such inventions he is required to make a new application, subject to such rights as the public and other inventors may have acquired in the meantime." *Powder Co.* v. *Powder Works*, cited *supra*.

The case is a different one from that of the *Yale Lock Manuf'g Co.* v. *Scovill Manuf'g Co.*, recently before this court. In that case the invention described in the re-issue was manifestly the same which formed the subject of the original specification, but was there cramped within too narrow bounds. In this case, the invention which is described in the last two claims of the re-issue is not the same which was the subject of the original specification, and those claims are therefore void.

The bill should be dismissed.