**FINKELSTEIN v. S. H. KRESS & CO.,**
Inc., et al.
*No. 309.*

Circuit Court of Appeals, Second Circuit.
July 8, 1940.

432

Bernard Kovner, of New York City (W. Lee Helms, of New York City, of counsel), for George Herbert Plate, intervenor-defendant-appellant.

Mock & Blum, of New York City, for plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and PATTERSON, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action at law brought by the owner of U. S. Patent No. 2,039,789 to recover damages for infringement. The patent was for a new and improved hair curling device and a new and improved method of curling the hair. The object of the patent is to provide a hair curling device and a method of curling the hair whereby a woman can form a series of curls in her hair and hold each curl in place by means of a bobby pin. In order to hold a curl by a bobby pin it is necessary for one shank of the pin to be located inwardly of the curl and the other shank to be located outside of the curl, so that the wall of the curl is clamped between the two shanks of the bobby pin.

The specification contains the following observations: "It has heretofore been well known to curl a lock of hair into spiral form by means of various devices. After the lock of hair was moistened, it was then wound upon the curling device, and the curling device was removed from the lock of hair after the lock of hair had dried. In many cases it was necessary to hold the lock of hair in its curled shape, by means of a hair pin, after the hair curling device had been removed. This was inconvenient, and the object of the invention is to combine a holder of an improved type with a hair pin, so that the hair pin, or a shank thereof, can be applied to the lock of hair during the curling operation, and the hair pin remains in engagement with the lock of hair, after the holding device has been removed from the lock of hair."

The specification further stated:

"When the device is operated, the lock of hair is wound spirally around one of said shanks of the hair pin, and out of contact with said shank of the hair pin. When the holding device is removed, the lock of hair remains spirally wound around one of said shanks and the other shank of the hair pin H resiliently clamps the outer turn of the spiral.

"Whenever I refer to engaging the end of the lock of hair, or to engaging one or both shanks of the hair pin, I do not wish to be limited to any particular form of clamping device, and I can omit the use of a positive clamping device."

The advantage gained by the invention is that it avoids the necessity of leaving curling devices in the hair until the curls are set. After the lock is curled the curler can be longitudinally removed and the bobby pin which was assembled with the hair curler in the beginning of the operation will remain in operative position and hold the lock of hair in its spirally wound form. This was not true in the case of the curlers exemplified by Plaintiff's Exhibits 3 and 4 which had long been on the market for those curlers had to be left in the hair until the curl had set. In other words, no use of bobby pins was contemplated in connection with those curlers. Exhibits 5 and 6 likewise do not possess the advantage of the patent in suit which is the assemblage of the bobby pin with the hair curler in advance of

the curling operation so that the operator will not be obliged to insert the bobby pin blindly but will use a device in which the bobby pin is at all times in proper position for the removal of the curler.

The patent in suit issued on May 5, 1936. Since that date the plaintiff sold hair curlers manufactured in accordance with the patent as follows: 1,000,000 curlers in 1937, 2,000,000 in 1938 and 1,000,000 in 1939. When he was asked at the trial about what feature of his device, known as the Pro-Curler, caused the sales to be so large, he replied: "The feature that you put in a bobby pin first, and when you roll your hair around the back you do not have to see how to put the pin in; you pull out the curler and it automatically goes in the bobby pin and stays there, the curl" (Record, fols. 267, 268).

■ The presumption attending the granting of the patent, the absence of any anticipation in the prior art and the failure of the defendant to dispute that it involved invention would seem to place its validity beyond doubt. While the defendant seeks so to limit the claims as to avoid the charge of infringement by his Presto-Matic Curler a construction so limited would render a meritorious invention practically valueless. In attempting to limit the claims the defendant principally relies on U. S. Patent No. 741,711 to Phelan and Braund; U. S. Patent No. 909,079 to Goldner, and the British Patent No. 13,558 A. D. 1903 to Almer. The Phelan patent shows a bifurcated curling iron, but makes no provision for using a bobby or other hair pin to keep the curled lock in place. The Goldner patent shows a single arm grooved curler in which a flexible piece of wire is located which is to remain to hold the lock of hair in position after it is curled and the curler is withdrawn. Goldner neither disclosed nor contemplated the use of a bobby pin. The Almer patent is scarcely any more pertinent as a reference than the other two. It does not disclose a pin the shanks of which may be released in order to clamp the lock of hair after it is curled, but merely shows a curler that may be withdrawn so as to leave the lock spirally wound around both shanks of a pin (fig. 7) instead of being wound around one shank only as in the patent in suit. The Almer patent does not provide for the insertion of the pin in the curler prior to winding, nor for a rotatable member around which the hair is to be spirally wound, such member being turnable rela-

tively to a member in which the pin is inserted. Furthermore, none of the three patents last referred to seems to have had any commercial development.

■ The defendant argues that his curler does not infringe because the mandrel never receives a shank of the hair pin which is spaced away from it and longitudinally away from the curl. But in using plaintiff's Pro-Curler, if the bobby pin is inserted into the curler for only a short distance, and a narrow lock of hair is wound, the tips of the bobby pin are spaced longitudinally from the curl. If a bobby pin is thus inserted only a short distance into the Pro-Curler, the operation is the same as in the defendant's Presto-Matic device. In the plaintiff's curler the bobby pin is separated so as to thread the curl with one shank of the pin and to clamp it with the other when the curler is withdrawn. In the defendant's curler the separation is effected by inserting one shank of the pin in a slot in the pivoted member so shaped as to wedge the two shanks apart instead of by inserting one shank in the mandrel and the second shank in the other member as the plaintiff does. The result of each process is the same and is accomplished in ways and by devices that would seem to be obvious equivalents.

It is true that the two method claims [1 and 2] provide for winding the lock of hair around one of the shanks of the pin and that claims 3, 4 and 5 say in substance that the two members of the holder must be so spaced as to separate the two shanks of the pin. Claims 6 and 7 provide that the members shall be "shaped so as to hold a hair pin". The defendant's method and structure do not literally do these things but functionally they operate in the same way upon the withdrawal of the curler from the ringlet and the means of accomplishing identical results are substantially equivalent.

■ It is argued by defendant that there was no proof that the equivalents employed were known at the time when the plaintiff made his invention. The Supreme Court did not hold in Imhaeuser v. Buerk, 101 U.S. 647, 655, 656, 25 L.Ed. 945, for it dealt only with equivalents that were known at the date of the patent. If the contention of the defendant were sound it would prevent patentable improvements from ever being valid improvements that such knowledge was essential, when the element which created the improvement was unknown to the art. Temco Co. v.

Apco Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298; Steel & Tubes Inc. v. Clayton Mark & Co., D.C.Del., 21 F.Supp. 326, 329, 330; Radio Corporation of America v. E. J. Edmond & Co., D.C.N.Y., 20 F.2d 929, 931. The question here, as in all other cases where infringement depends on the use of equivalents, is whether the substitute functions in the same way as the original. If it be thought that it was not indubitably clear that defendant's device came within the range of equivalents to which the claims were entitled there was certainly no error in the trial for the judge left the question of infringement to the jury under instructions to find infringement if it determined that the defendant's device did "the same work in substantially the same way and accomplished substantially the same result" (Record, p. 178). The jury found for the plaintiff and this appeal is from the judgment entered upon that verdict.

■ The defendant did not ask for the direction of a verdict. He has appealed from an order denying the motion to set aside. Such an order is not appealable for there was no abuse of discretion such as we found justified a review in Pettingill v. Fuller, 2 Cir., 107 F.2d 933. Cf. Fairmount Glass Works v. Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439. The main reliance of the defendant is upon supposed errors in the charge, but we can discover nothing wrong with it.

■ The defendant first points out that the court erred in refusing to charge that infringement depended upon a finding "that defendant's device has the elements of the claim of plaintiff's patent, construed as required in said claim", but the court did charge that: "Under the statute it is the claims of the patent which define the invention" and said "That means these claims 1 to 7 define the invention in the way I tried to indicate to you at the opening of the trial."

The second objection to the charge was substantially to the same effect and likewise the third.

We have already dealt with the further objection that to constitute an equivalent of an element set forth in the claim of an improvement patent the equivalent must be such that it was well known at the date of the patent that it was adaptable for the use performed by the said claimed element. We find no error in the charge.

Judgment affirmed.