## MONOGRAM MFG. CO. v. GLEMBY CO., Inc., et al.

### No. 255.

Circuit Court of Appeals, Second Circuit.

July 15, 1943.

Asher Blum, of New York City (Mock & Blum, of New York City, on the brief), for appellants.

Collins Mason, of Los Angeles, Cal. (Hornidge & Dowd, of New York City, on the brief), for appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal by defendants from an interlocutory judgment of the District Court that they have infringed claims 11, 12, 13, and 15 of the Visitacion Reissue Patent No. 21,117 and the single claim of the Wallace & Leisy Patent No. 2,156,073 owned by the plaintiff. Both patents are for hair-curling devices and disclose curling instruments which carry hairpins at their

ends so that withdrawal of the instrument from a curl of hair leaves the hairpin in the curl and the latter in place on the human head. Both patents are challenged for lack of invention, and the reissue of the -Visitacion patent is also claimed to be void because of expanded claims and intervening rights. Though defendants denied infringement, yet they have not attacked here the District Court's finding that that was clearly shown.

The claims of the Visitacion reissue patent describe a hair-curling device comprising a handle, with two forked arms of unequal length, the longer containing a cavity into which one leg of a hairpin is inserted and an angled end which spreads the pin and holds it in position to receive the curl after it is wound upon the forked arms. The Wallace & Leisy patent simply claims an improvement over the Visitacion reissue patent in a hairpin holding groove, in contradistinction to the hairpin holding cavity of the Visitacion patent, and in a resilient construction whereby the short arm of the handle becomes a clamping member for the curl. Defendants' curler is an exact counterpart of this improved curler.

The closest prior art relied on as anticipation of plaintiff's curler is Bagshaw Patent No. 417,462, granted in 1889 for mustache curling tongs, and Freeman Patent No. 2,039,789, held valid in Finkelstein v. S. H. Kress & Co., 2 Cir., 113 F.2d 431, for the commercially successful "Pro-Curler." The latter consists of two arms of equal length, one held stationary while the other, to which the hair may be clamped, is turned relative thereto to wind the curl. Once wound, the curl is removed laterally and caught in place by a bobby pin whose legs have been inserted in the ends of the arms. But both patents miss the novelty of the patents in suit—Bagshaw for want of any use of a bobby pin, and hence of the fundamental idea of this device, and the Pro-Curler for its more complicated structure and expensive construction and its integration of the bobby pin in the actual winding process.

Another Freeman patent, No. 2,278,541, for an exact replica of plaintiff's device, is cited as having prior rights to the invention. It was issued April 7, 1942, upon an application dated September 16, 1936. If filing dates are controlling, it must accordingly prevail, since the Visitacion reissue can at best be dated back to the original application on May 25, 1937. But plaintiff has established a prior reduction to use which overrides the priority in filing dates. It appears that Visitacion completed two models for a hair curler in May, 1935, consisting of a single arm with a hinged clamp for the hair and a hairpin holder operated in about the same fashion as the device in issue. He tried them on his wife and found that "it worked." In April, 1936, he devised the model which is the direct prototype of the original patented curler—however without a spring to clamp the hair to the curler. Between July, 1935, and May, 1937, he negotiated with the defendant Glemby Co. for a license on his invention. He also showed his models to at least one other curler manufacturer, Nathan L. Solomon, in October, 1936. An exclusive license agreement was consummated with Glemby on May 17, 1937, and its lawyers then took over the job of preparing the application for the patent as issued. In all this we have no doubt that there was a reasonably sufficient reduction to practice to antedate Freeman's invention, especially, as it appears that Freeman was employed by a Glemby director, frequently visited that company, and quite possibly saw Visitacion's models and consciously or unconsciously may have copied them.

Like considerations move us to hold that Solomon British Patent No. 465,659 for the "Solo curler" does not antedate the Visitacion patent, even if, as we seriously doubt, it can be considered to disclose the Visitacion device. It was issued upon an application of Nathan L. Solomon dated November, 1936, for a device in effect fully disclosed by the first Visitacion models, which he had seen within the preceding month.

■ The District Court held that the Visitacion patent showed patentable novelty, constituting a substantial advance in the hair curler art, and we agree. There can be no doubt of the gain in simplicity of construction, rendering it possible to make the entire device cheaply in one piece without the necessity of employing relatively movable parts. This alone showed utility. Further, the operation of the device is simpler, since the curl is formed by rotating the entire device as a unit without winding the hair around the curling arm and the carried bobby pin, and there are no relatively movable parts to catch or break the hair strands. Defendants offered testimony that the device was not as satisfactory as the "Pro-Curler" in that the curls were

not as tight and well fashioned. Conceivably this may be so without denying substantial utility to plaintiff's device for the trade for which it was designed. As a matter of fact, it appears to have had a real commercial success when it came on the market; during the first seven months after plaintiff had introduced it, over 500,000 curlers were sold at 25 cents each. Nor are defendants in a sound position to attack the utility of the device, for their Chinese copying of it amounts to an admission of its utility. Boyce v. Stewart-Warner Speedometer Corp., 2 Cir., 220 F. 118, 126. Since defendants sold this copy first at 15 cents and later at 10 cents, it is natural that plaintiff's returns from its article were depressed.

■ The Visitacion patent, however, is further assailed as an invalid reissue under R.S. § 4916, 35 U.S.C.A. § 64, which provides for a reissue "whenever any patent is wholly or partly inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention." Defendants contend that the claims of the original patent required a spring between the arms of the curler as a means of clamping the hair and holding it for the winding process, and that the reissue, in adopting all the original claims, but adding several which omitted the spring, was for a different invention. The court below found that Visitacion himself did not intend any such limitation in the original as that contended for and had so informed his lawyers. That alone cannot be conclusive, since the test must be what was fairly disclosed as essential in the original. This is made clear by the latest case on the subject, United States Industrial Chemicals, Inc., v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 677, 62 S.Ct. 839, 844, 86 L.Ed. 1105, where the Court said: "We think it plain that the reissue omitted a step in the process which was described and claimed as essential in the original patent." Hence, does the original patent here, fairly and reasonably interpreted, describe and claim the spring as an essential part of the curler?

The argument for such a reading is, of course, the obvious fact that the drawings of the original patent do depict, and the specifications describe, such a spring, either as a separate spring wire fitted between the arms of the curler or cut from the shorter arm, and that all of the seven original claims except one describe such a spring as a part of the appliance. But there are several reasons for rejecting so purely literal a reading. First, the patent itself, in three opening paragraphs stressing the objects of the invention, makes no reference in any way to any device requiring a spring. The first paragraph states that "an object of the invention is to provide an efficient hair curling implement to which the ends of hair strands are secured upon a tubular mandrel, thereafter coiled by winding thereon as closely as possible to the scalp," and continues to describe the process by which the coils are slipped from the mandrel between the prongs of a bobby pin carried by the mandrel in open position—all without reference to a spring. The second paragraph stresses the easy operation of the instrument, subjected to heat without damage, readily cleansed, capable of long service and of such simplicity as to be inexpensive to construct. And the final paragraph points out that the curler may be of one single piece of material, "having no additional attached or detached parts whatever, save the customary curl clamp or bobbie pin." Then the patent turns to the specifications and drawings, "which include preferred embodiments of the inventive idea." After these have been described, a paragraph states that, while the improvements have been described with considerable detail "with respect to certain particular forms of the invention, it is not desired to be limited to such details since many changes and modifications may well be made without departing from the spirit or scope of the invention in its broadest aspect." And claim 4, of both the original and the reissue patents, after describing the "two spaced members relatively long and short," continues, "means associated with said members to resiliently clamp a lock of hair entered therebetween," thus suggesting that a spring was not visualized as the sole means of holding the hair at the start of the curling process.

■■ Second, turning to the background of the art, in the light of which this instrument must be read, we find that in the Freeman patent for the successful Pro-Curler device there is depicted a spring, of much the same sort drawn by Visitacion, which "may be provided for clamping the end of the lock of hair" to the curling mem-

ber "if desired," "but this is not necessary." For the lock of hair might merely be "inserted between the two halves of the member." Again, defendant's witness Solomon testified that in 1935 he had put out a curler, as a handle to a comb, which consisted only of two parallel members, one shorter than the other, that he had purchased a design patent from one Whyte in order to follow this design, and that plaintiff had paid him $125 to share in the use of this design patent.. And the old Bagshaw patent relied on the two parallel tongs to hold the mustache strands; these could be made of round spring wire to be sprung apart when the hair was inserted.

It is, therefore, quite clear that some means of holding the hair strands initially was quite old in the art, as was the practice of holding it by two separate prongs alone. In other words—as, indeed, seems obvious— there are different ways of curling hair, by tight spring clamps making a tight curl, with possible chance of pulling or tearing it, or more loosely without such clamps. Obviously, too, other factors than such a clamp will affect the result: whether the hair is wet or dry, or has been heated, its texture, the number of strands forced upon the curler, and so on. In the light of this background it seems harsh to hold the spring clamp as anything more than at most a "preferred embodiment." It may be noted that in the Industrial Chemicals case, the element omitted from the issue therefore held invalid was considered essential to the invention by the patentee himself and by the trade generally. That it was dispensable was discovered only by an independent and subsequent experimentation. Hence we agree with the District Court in concluding that the reissue patent, which continued to claim this embodiment, but expressly set forth other alternatives, was not unfairly broadened.

Our conclusion in this respect is reinforced by the clear showing made of bona fide inadvertence in filing the original application. Visitacion's testimony, accepted as true by the court below, was that he had instructed Glemby's lawyer—who was handling the application under the 1937 exclusive license agreement—to file claims for a curler both with and without the spring, and did not know, because of his insufficient knowledge of English (he is a Filipino), that such a patent had not been applied for until his attention was called to the fact after the patent had issued. And while that attorney on cross-examination could not recall this instruction, he testified that he may have filed the original claims to the spring because of an impression— erroneous though it was—that the prior art required it. It may be noted, too, that the first model of the patented invention had no spring. And finally there is the commissioner's determination that the original claims were inadvertently restricted. Cf. Topliff v. Topliff, 145 U.S. 156, 171, 12 S. Ct. 825, 36 L.Ed. 658. A bona fide mistake in filing has been held sufficient to justify a reissue even with slightly broadened claims. Miller v. Brass Co., 104 U.S. 350, 26 L.Ed. 783; Topliff v. Topliff, supra.

The patentee's diligence in applying for a reissue also helps to persuade to this result. The original patent issued October 11, 1938; the mistake in filing was discovered about October 20, 1938; and application for reissue was filed on January 7, 1939. A two-year prescriptive period between the grant of the original patent and the filing of the application for reissue has usually been allowed—by analogy to the statutory provision denying patentability to a device in the public use for two years (changed to one year by amendment effective in 1940). Cf. Wollensak v. Reiher, 115 U.S. 96, 5 S.Ct. 1137, 29 L.Ed. 350; 51 Yale L.J. 491, 495; and cf. 35 U.S.C.A. § 31. True, there has been some tendency to reduce this period as an allowance of right where there are intervening claimants to the invention newly covered by the reissue. Thus, it has been held on the one hand that the patentee is estopped to assert his reissue against such claimants. Sontag Chain Stores Co. v. National Nut Co. of California, 310 U.S. 281, 60 S.Ct. 961, 84 L.Ed. 1204; Ashland Fire Brick Co. v. General Refractories Co., 6 Cir., 27 F.2d 744, certiorari dismissed 278 U.S. 662, 49 S.Ct. 7, 73 L.Ed. 569; Bull Dog Floor Clip Co. v. Munson Mfg. Co., 8 Cir., 19 F.2d 43. And on the other hand it has been intimated that these intervening claims are in any event, even though not personal to a party in suit, evidence of an abandonment of the originally unclaimed portions of the invention to the public. Otis Elevator Co. v. Atlantic Elevator Co., 2 Cir., 47 F.2d 545; Stanley Works v. C. S. Mersick Co., D.C.Conn., 34 F.Supp. 913; Schenk v. United Aircraft Corp., D.C.Conn., 43 F. Supp. 679, modified on appeal Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632; Tulchin v. Perey Mfg. Co., 2 Cir.,

87 F.2d 302, certiorari denied 300 U.S. 674, 57 S.Ct 613, 81 L.Ed. 880. See generally Rice and Grossman, Reissued Patents and Intervening Rights, 43 Yale L.J. 766; Reissue of Patents on Broadened Claims, 51 Yale L.J. 491.

But we need not consider this law here, for no intervening rights have been established. Application for the second Freeman patent, No. 2,278,541, was filed on September 16, 1936, and for the Wallace & Leisy patent on June 13, 1938. The mere pendency of a patent, however, does not establish an intervening right. American Automotoneer Co. v. Porter, 6 Cir., 232 F. 456. Solomon's 1935 curler, similar in construction to plaintiff's device except that it lacked the hairpin holder, was abandoned by him the same year. And while plaintiff began to manufacture the same curler as that in issue in August, 1938, before it had acquired rights under the Visitacion patent, it did seek to acquire such rights as soon as the patent issued, its president actually suggested the reissue to Visitacion, and it finally became the legal assignee of the invention in May, 1939. All this is a far cry from a showing of an adverse claim to the device of the reissue, arising between the grant of the original and the filing of the reissue application. Defendant Glemby cannot claim itself to be an intervenor, for it did not begin to manufacture the accused device until March, 1939.

It follows that the judgment below was correct so far as it concerns the Visitacion patent. Turning now to the Wallace & Leisy patent, we think that must be held invalid for want of patentability. The curler there appears as a handle to a comb which at most is only a useful arrangement, following the design patent used by Solomon in 1935. The two improvements claimed for this patent are the use of resilient materials, such as a molded hard rubber composition, to secure the clamping effect discussed above, and the use of a groove at the end of the longer arm instead of a "cavity," to hold the hairpin rigidly in place. Our discussion in connection with the reissue of the Visitacion patent shows that the first cannot now be considered a patentable novelty. As to the second, which is the ground upon which the Patent Office, having rejected earlier claims "as being obviously fully met by the structure of Visitacion," finally allowed the single claim, we cannot find enough of a difference to justify the patent. The various descriptions of the original patent suggest a fairly rigidly and tensely held hairpin; thus one claim speaks of "a depression formed in the one end of the [tubular] body, a recess formed in said depression and leading therefrom in the outer surface of the body to receive an arm of a bobbie pin," while another speaks of "a longitudinally extending cavity adapted to receive one leg of a hair pin and with an end formation adapted to spread the two legs of the applied pin," etc. Further, what function rigidity beyond that required by such a construction would serve is not shown. This is not invention. Cf. Saltex Looms v. Collins & Aikman Corp., D.C.S.D.N.Y., 43 F.Supp. 914, affirmed 2 Cir., 130 F.2d 943. Moreover, while the patent really embodies only improvements, it lays claim to the complete device; but Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, warns against any attempt to gain a patent monopoly over an old combination by the mere improvement of one of its parts. It therefore cannot stand.

The interlocutory judgment for plaintiff is therefore affirmed as to the Visitacion patent, and reversed as to the Wallace & Leisy patent.