**CHORE–TIME EQUIPMENT, INC.**

v.

**AUTOMATIC POULTRY FEEDER CO.,**
**Inc. and De Witt Industries, Inc.**

**No. 4853.**

United States District Court
W. D. Michigan, S. D.

March 12, 1965.

Uhl, Bryant, Wheeler & Upham, Gordon B. Wheeler and George V. Boucher, Grand Rapids, Mich., of counsel, Pepple, Yoder & Ainlay, Frank E. Yoder, Goshen, Ind., of counsel, Olson, Trexler, Wolters & Bushnell, Richard R. Trexler and Richard Bushnell, Chicago, Ill., of counsel, for plaintiff.

Price & Heneveld, Lloyd A. Heneveld, Grand Rapids, Mich., of counsel, Warner, Norcross & Judd, Charles C. Lundstrom, Grand Rapids, Mich., of counsel, for defendants.

FOX, District Judge.

Defendants have moved for a partial summary judgment under the following set of facts:

Plaintiff holds Patent No. 3,033,163 for a type of automatic poultry feeder. It applied for and received a reissue patent, No. 25,589. The reissue patent is substantially similar to the original patent, with the exception of claims 8, 9 and 10, which are not present in the original patent.

Defendants claim that inasmuch as the present suit concerns infringement of claims 8, 9 and 10, of the reissue patent, it should be dismissed by summary judgment under the rule of 35 U.S.C. § 251, dealing with reissue patents, which states that "[n]o new matter shall be introduced into the application for reissue."

Plaintiff alleges that the question of whether or not the claims in issue are new matter is one of fact, and its determination should await a trial on the merits. Furthermore, plaintiff claims that, in fact, the claims are supported by the original patent and do not incorporate new matter.

The specific item objected to in claims 8, 9 and 10 is the following: "Said electric motor unit including a drive shaft generally aligned with said feed line and connected to a downstream end of said augur helix for rotating said augur helix." [1]

Apparently then, the center of controversy is the means of providing power for the augur which distributes the feed

---

[1] Among the claimed objects of the invention, set forth in the specifications of both the original and reissue patents, are the following:

"Still another object of the invention is the provision of a device of this character which may be readily moved out of the area or out of the way when not in use, or when other activities such as cleaning out the house, catching the birds or spreading clean litter is taking place."

"Still another object of the invention is the provision of means whereby the feeder trays or troughs may be readily adjusted to the height of the birds as the birds grow."

"A still further object of the invention is the provision of such a feeding device which provides a continuous supply of fresh, clean feed of uniform mixtures to all parts of the poultry house to a degree not possible with known or existing feeding devices such as a chain or trough type."

"An additional object of the invention is the provision of an arrangement of individual circular feeding pans whereby the tendency of the birds to rush to the portion of the trough with the fresher more complete ration, as is the case with the chain or trough feeders, thus crowding out the weaker or more timid birds, is obviated."

"An additional object of the invention is the provision of an arrangement of spaced circular pans supported at a proper height from an overhead support so that the birds may walk freely between and under the pans thus allowing considerable freedom of movement to the birds and allowing the young birds to get to and from heated brooding areas, water and feed, with a minimum of difficulty."

"A more specific object of the invention is the provision of means for adjusting an entire line of feeder pans from a single winch arrangement so that a complete line can be adjusted by means of one operation, either for altering the height of the feed pans as the birds grow, or for completely lifting the line from the floor area to permit access to the floor area for other purposes."

along the lines of trays from which the chickens eat.

The sole legal question is whether the prohibition against "new matter" set down by 35 U.S.C. § 251 has been disregarded.

The cases which have been decided on the issue presented have laid down a number of tests for the determination of whether or not the reissue patent contains "new matter."

The early case of Siebert Cylinder Oil Cup Co. v. Harper Lubricator Co., 4 F. 328 (C.C. 1880), quoted at page 333 from Powder Co. v. Powder Works, 98 U.S. 126, 25 L.Ed. 77:

> " 'By "new matter" we suppose to be meant new, substantive matter, such as would have the effect of changing the invention, or of introducing what might be the subject of another application for a patent.' "

A later Sixth Circuit Case, Michigan Cent. R. Co. v. Consolidated Car-Heating Co., 67 F. 121 (1895), held that the original drawings and specifications must indicate the device "to those conversant with the art and having the mechanical skill peculiar thereto" in order for the court to hold that no new matter was contained in an amendment (reissue patent).

A refinement of this test was expressed by the court in Krauth v. Autographic Register Co., 3 Cir., 285 F. 199:

> "It is not new matter within the meaning of this provision to state a new use of the invention shown in the original; to explain, in a reissue, the operation of a device which in the original was only described; to vary and enlarge the description of anything inadequately described in the original." Id. at 203.

A further expansion is found in National Nut Co. of California v. Sontag Chain Stores Co., 9 Cir., 107 F.2d 318, at 331–332:

> "An analysis of the cases dealing with reissues will show that there is a distinction well marked between reissues broadening the claims of the original but confined to the invention therein exhibited, which the courts sustain, and reissues that depart from the invention exhibited in the original and included under its statement of invention.

> "A reading of the new claims of the reissue herein convinces us that *they do not exhibit any change in the nature of the invention described, but that they simply give a more adequate description of the invention, enlarging the claims but not enlarging the invention.*" (Emphasis supplied.)

In Monogram Mfg. Co. v. Glemby Co., 2 Cir., 136 F.2d 961, the court resolved the question of validity of the contents of the reissue patent by following what it conceived the test to be: " \* \* \* *the test must be what was fairly disclosed as essential.*" Id. at 963. (Emphasis supplied.)

Finally, the case of In re Freedlander, 3 Cir., 143 F.2d 982, adopts a test which depends upon a determination of whether or not any structure which infringes claims of the reissue application would also infringe claims of the original patent. If this is not the case, then the claims of the reissue application are broader than the claims of the original patent, and the reissue patent is therefore invalid under the terms of 35 U.S.C. § 251.

The cases cited by defendants in their brief in support of the motion for summary judgment supply nothing more than the foregoing cases, defendants' position being simply that new matter has been introduced in the reissue patent and, therefore, it is invalid. The cases amply support the point of law stressed by defendants, but defendants presuppose the factual basis for their motion, namely, that new matter is in fact incorporated into the reissue patent.

A brief examination of the tests employed by the courts in dealing with this question will disclose that there are distinct technical questions to be decided before the court can say for certain whether or not the reissue patent is invalid be-

cause of the inclusion of matter not present or apparent in the original patent. For all that has been presented to this court at the present time, the motor unit which drives the augur is the bone of contention. It is undisputed that the augur is an essential part of both the original and the reissue patents, and presumably, even to the untrained, the augur requires some power source to rotate it, apparently, in this case, said motor unit.

In Weller Mfg. Co. v. Wen Products, Inc., 7 Cir., 231 F.2d 795, the court held that a reissue patent for a soldering gun was not invalid on the ground that it contained new matter not presented in the original patent in view of a showing that the theory of operation described in the reissue patent constituted a correct exposition of the inherent method of operation of the device disclosed in the original patent.

Plaintiff in its brief has made out a prima facie case for sufficient evidence in the original patent to support a finding that the contested motor unit is merely an exposition of an inherent mode of operation of the augur, in line with the theory of the Weller case.

The case which is most damaging to defendants' position is the Sixth Circuit case of Hartzell Industries, Inc. v. McCauley Industrial Corp., 304 F.2d 481 (1962). Because it is virtually on point, extensive quoting from the opinion by Judge O'Sullivan is worthwhile.

> "The averments of defendant's motion say no more than that claims 8 and 9 of the reissue patent are not identical with claims of the original patent and that such claims 8 and 9 'are obviously different from and broader in scope than original claims 1 and 2' (counsel's affidavit). Such averments do not establish, beyond factual dispute, that claims 8 and 9 of the reissued patent are not comprehended by *the invention disclosed in the original patent* or that they introduce *new matter* constituting a *new invention*." Id. at 482.

\* \* \* \* \* \*

> "We hold that the mere fact that claims 8 and 9 of reissue patent no. 24,530 are not identical with the claims of the original patent and are broader in scope does not destroy their validity as parts of the reissued patent." Id. at 483.

\* \* \* \* \* \*

> "Essential to the granting of the reissued patent, therefore, was the Commissioner's finding that Reissue Patent No. 24,530 was for the invention disclosed in the original patent and, likewise, that the application therefor, including the new claims 8 and 9, did not introduce new matter. Initially we assume that he made such necessary finding. *A reissue patent is given the same presumption of validity as that given to an original patent.* Hazeltine Research Inc. v. Avco. Mfg. Corp. [et al.], 227 F.2d 137, 146 (CA 7, 1955); England v. Deere & Co., 284 F.2d 460 (CA 7, 1960)." Id. at 483–484.

> "We do not decide the consequences to the litigants here if, upon trial, it is found that the application for reissue patent No. 24,530 did, in fact, introduce *new matter* by the inclusion of new claims 8 and 9, and that the reissue patent, with such claims a part of it, describes something other than 'the invention disclosed in the original patent.' \* \* *The material relied on by defendant in his motion did not demonstrate that there was no issue on such factual question.* On this appeal, defendant urges us to make such findings by examining the specifications, the drawings, the claims and the oath of the inventor, all a part of the application for the reissue patent. *It is not our function to do so. The taking of testimony will undoubtedly be necessary to resolve such factual questions.*" Id. at 484. (Emphasis supplied.)

▆▆ In the instant case, the specifications, drawings and oath of the inventor, all incorporated in the application for the reissue patent, have been

examined by the court, as suggested by defendants. Without testimony, it is not possible to conclude with certainty, particularly in view of the presumption of validity which must be afforded a reissue patent, that claims 8, 9 and 10 contain "new matter" as defined by the decided cases.

On the basis, therefore, that under the traditional tests used to determine the validity of a reissue patent brought in question by allegations of "new matter" the court is not qualified at this time, with the evidence presently before it, to make such a determination, and under the authority of the Hartzell case, supra, the motion for summary judgment is denied.

A motion to compel answers to interrogatories, brought by defendants, has been held in abeyance, and will presumably be settled by recourse to the Rules of Practice before the Patent Office, which contain the form of the question propounded by defendants in a manner acceptable to plaintiff.