# United States Court of Appeals for the Federal Circuit

---

**IN RE: FLOAT'N'GRILL LLC,**
*Appellant*

---

2022-1438

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 16/110,448.

---

Decided: July 12, 2023

---

DEAN W. AMBURN, Amburn Law PLLC, Detroit, MI, argued for appellant.

PETER JOHN SAWERT, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Katherine K. Vidal. Also represented by DANIEL KAZHDAN, THOMAS W. KRAUSE, AMY J. NELSON, FARHEENA YASMEEN RASHEED.

---

Before PROST, LINN, and CUNNINGHAM, *Circuit Judges.*

LINN, *Circuit Judge.*

Appellant, Float'N'Grill LLC ("FNG"), appeals from the decision of the Patent Trial and Appeal Board ("Board") affirming the Examiner's rejections under 35 U.S.C. §§ 112(b) and 251 of claims 4, 8, 10–14, and 17–22 of FNG's application for reissue of its U.S. Patent No. 9,771,132

("'132 patent"). Because the reissue claims in question do not cover "the invention disclosed in the original patent" as required by 35 U.S.C. § 251, we affirm that rejection and need not address the indefiniteness of those claims under 35 U.S.C. § 112(b).

## I. BACKGROUND

The '132 patent is directed to a float designed to support a grill to facilitate a user grilling food while remaining in a body of water. The specification of the '132 patent describes a single embodiment, illustrated in Figures 1 and 2, below.



FIG. 1                    FIG. 2

The floating apparatus 10, illustrated in Figures 1 and 2, includes a float, 20, and a pair of grill supports, 46 and 48, each of which has a base rod, 50, and an "inverted substantially U-shaped upper support 52 medially attached to a top surface 54 of the base rod." '132 patent, 2:60–3:17. Each of the grill supports "includes a plurality of magnets 60 disposed within the middle segment 58 of the upper support 52 of each" grill support. *Id.* at 3:18–21. The specification specifically states: "A flattened bottom side 74 of a portable outdoor grill 76 is removably securable to the plurality of magnets 60 and removably disposed immediately atop the upper support 52 of each" of the grill supports. *Id.* at 3:35–39. No other structure besides the plurality of

magnets is disclosed, suggested, or implied for removably securing the grill to the supports.

The centrality of the "plurality of magnets" to the invention disclosed in the original patent is at the core of this case.

Claim 1 of the original patent is narrowly tailored to the single embodiment disclosed in the written description (i.e., essentially a "picture claim"). As originally issued, the language of claim 1 included a recitation of the plurality of magnets that exactly mirrored its description in the specification. Claim 1 was never rejected during prosecution and was allowed in the first office action as originally presented. The claim reads, in relevant part, as follows:

> 1. A floating apparatus for supporting a grill comprising. . .
>
>     . . .
>
>     a plurality of magnets disposed within the middle segment of the upper support of each of the right grill support and the left grill support . . .
>
>     . . .
>
>     wherein a flattened bottom side of a portable outdoor grill is removably securable to the plurality of magnets and removably disposed immediately atop the upper support of each of the right grill support and the left grill support.

After the '132 patent was issued, FNG, believing that it claimed less than it was entitled to claim in the original patent, filed a reissue application, seeking now-rejected claims 4, 8, 10–14, and 17–22. None of these claims contain the narrow "plurality of magnets" limitation. Instead, the claims more generically call for the removable securing of

a grill to the float apparatus.  Representative claim 4 of the reissue application reads as follows:

> 4.  A floating grill support apparatus adapted to support a grill on water, the apparatus comprising:
>
>> a float having an outer rim wherein the float is buoyant and adapted to float in water and support a grill above the water; and
>>
>> at least one base rod disposed within the outer rim wherein the base rod comprises a grill support member;
>>
>> wherein the grill support member has an upper support portion;
>>
>> wherein a bottom side of the grill is removably securable and removably disposed immediately atop the upper support portion of the grill support member.

The Examiner rejected claims 4, 8, 10–13 and 19–22 as indefinite and claims 4, 8, 10–14, and 17–22 for failure to satisfy the reissue standard of 35 U.S.C. § 251.  Concerning § 251, the Examiner found that the '132 patent disclosed "a single embodiment of a floating apparatus for supporting a grill" using a "plurality of magnets" and  did not disclose the plurality of magnets as being "an optional feature of the invention." J.A. 145–46.  The Examiner also found that "it is *prima facie* apparent that the magnets are a critical element of the invention, as the magnets alone are responsible for effecting a safe and stable attachment between the floating apparatus and the grill." J.A. 146.

Referring specifically to the presented claims, the Examiner noted that: (1) claims 4, 19, and 21 do not require any magnets; (2) claims 8, 20, and 22 require only a single magnet; and (3) claim 14 does not positively recite any magnets, but refers only in the preamble to a "float adapted

to magnetically attach to a grill," which the Examiner considered to encompass an embodiment with magnets only on the grill not on the float.  J.A. 145, 133–34.  Because the claims in question do not require that the grill supports contain the "plurality of magnets" limitation considered essential to the invention as disclosed, the Examiner concluded they do not satisfy the original patent requirement of § 251.

The Board sustained all the Examiner's rejections, except for indefiniteness of claims 19 and 20 (though these claims remained rejected under 251).  FNG appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II.  DISCUSSION

### A.  Standard of Review

The Board's assessment of whether new claims presented in a reissue application comply with 35 U.S.C. § 251 is a question of law that we review de novo, based on underlying findings of fact reviewed for substantial evidence. *Forum US, Inc. v. Flow Valve, LLC*, 926 F.3d 1346, 1350–51 (Fed. Cir. 2019).

### B.  Analysis

#### 1.  The "Original Patent" Requirement

An applicant is free to seek an expanded scope of coverage beyond that originally sought by filing a continuation or divisional application during the pendency of a parent application and may therein include claims extending to the full scope of the subject matter described in the original specification under 35 U.S.C. § 112(a).  *Antares Pharma, Inc. v. Medac Pharma Inc.*, 771 F.3d 1354, 1358 (Fed. Cir. 2014).  Once a patent is granted, however, a patentee seeking to change the scope of the claims through reissue is subject to the additional statutory limitations in 35 U.S.C. § 251, including, as particularly relevant here, that the reissue claims must be directed to "the invention disclosed in

the original patent." *Id.* at 1358 (also noting the prohibition against recapture of disclaimed subject matter); 35 U.S.C. § 251. This has come to be known as the "original patent" requirement of § 251. *Id.*

The blackletter standard for satisfaction of the original patent requirement is found in *U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals, Corp.*, 315 U.S. 668 (1942). There, the original specification explained that the addition of water improved the efficiency of a certain reaction by limiting inefficient side reactions. *Id.* at 671–73. Nothing in the original specification indicated that water was optional. *Id.* at 673. After the patent was issued, the patentee discovered that water was not required for the most efficient reaction and obtained a reissue patent with a substitute specification and new claims, indicating that the reaction could take place with or without added water. *Id.* at 673–74.

In its validity analysis, the Supreme Court compared the specifications of the original and reissue patents and characterized the question before it as "whether, in the light of the disclosures contained in the two patents, they are for the same invention." *Id.* at 675.[1] The Court then went on to conclude that "they are if the reissue fully describes and claims the very invention intended to be secured by the original patent." *Id.* at 675–76. The Court also noted that "[i]t must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original."[2] *Id.* at

---

[1]    The "same invention" standard is a substantively identical predecessor to the current "original patent" requirement under § 251. *Antares*, 771 F.3d at 1359–61.

[2]    We have rejected the gloss on this standard that depends upon the "intent" of the patentee. *Antares*, 771 F.3d at 1361–62 (describing prior Federal Circuit decisions).

676. Because the original specification and claims treated the voluntary introduction of water as "a necessary step" in the process, and because on the face of the two patents the introduction of water was "a step not designated as optional or desirable but described and claimed as an integral part of the whole operation," the Supreme Court concluded that the omitted step of introducing water was "essential in the original patent," and its absence in the reissue claims rendered those claims invalid as directed to a different invention than originally disclosed. *Id.* at 676–77. The Court further explained that a reissue claim does not meet the requirements of § 251 merely because the newly claimed invention "might have been claimed in the original patent because it was suggested or indicated in the specification." *Id.* at 676. The Court also noted that it was of no moment that "the result attained [in the reissue patent] is the same as that brought about by following the process claimed in the original patent." *Id.* at 678.

We have applied these general principles in a number of cases in which protection was sought by way of reissue for different aspects of inventions not claimed in original patents. In *Antares*, the original patent described jet injector devices for self-delivery of pharmaceuticals and specified the depth to which the needle plunges, the force at which the medicant is expelled, and the gauge of the needle. 771 F.3d at 1356. All of the original claims were limited to the disclosed jet injector device. *Id.* at 1362–63. On reissue, the patentee sought coverage for various safety features of injection devices, such as a push button with a lock. *Id.* We held that "[a]lthough safety features were mentioned in the specification, they were never described separately from the jet injector, nor were the particular combinations of safety features claimed on reissue ever disclosed in the specification." *Id.* at 1363. We further held that the cursory "suggestion" that a push button safety feature could be used in the original specification was not sufficient to satisfy § 251, because the specification did not

"disclose, in an explicit and unequivocal manner, the particular combinations of safety features claimed on reissue, separate from the jet injection invention." *Id.* (citing *U.S. Indus. Chem.*, 315 U.S. at 676).

In *Peters*, the invention claimed in the original patent was a display device having front and back walls separated by support elements, each having a metal tip along its length with a tapered cross-section. 723 F.2d 891, 92 (Fed. Cir. 1983). The specification described the function of the metal tips as securing the support elements in place and preventing lateral movement of the channels defined by the support elements. *See generally* U.S. Pat. No. 4,145,633. Peters' reissue patent claims omitted the tapered shape of the metal tip limitation. *Peters*, 723 F.2d at 892–93. The Board rejected the reissue claims under § 251 concluding that "the claims are unsupported by Peters' original disclosure." *Id.* at 893. This court reversed. We explained that nothing in the original specification suggested that the tapered shape of the tips was "essential or critical to either the operation or patentability of the invention." *Id.* at 893–94. We reached that conclusion because: (1) the tapering limitation was not used to overcome any prior art; and (2) "[m]ost importantly, one skilled in the art would readily understand that in practicing the invention it is unimportant whether the tips are tapered." *Id.* at 893. We cautioned that the Board should not improperly confine the invention to the specific embodiments disclosed in the original patent or to require the original specification to disclose each of the differing tip shapes in order to allow the broadening reissue claims, where "the overall disclosure reasonably conveys to one skilled in the art that the inventor had possession of the broad invention at the time the original application was filed." *Id.* at 894.

In *Forum*, original claims were directed to a "workpiece machining implement" that required a "plurality of arbors supported by the body member" so as to allow the member to rotate along different axes. 926 F.3d at 1349. The

specification of the original patent contained a number of embodiments, each having multiple arbors. The disclosure explained the advantage of multiple arbors as allowing for rapid and accurate machining by changing from one arbor to another. *Id.* On reissue, the patentee sought to broaden the claims to remove the "plurality of arbors" limitation in favor of a "support that is selectively positionable." *Id.* at 1350. We held that the reissue claims were invalid for failure to satisfy the original patent requirement, explaining that "nowhere do the written description or drawings disclose that arbors are an optional feature of the invention." *Id.* at 1352.

In each of these cases, the focus of the § 251 analysis was on the invention disclosed in the original patent and whether that disclosure, on its face, explicitly and unequivocally described the invention as recited in the reissue claims. As relevant to this appeal, we hold that reissue claims broadening a limitation to cover undisclosed alternatives to a particular feature appearing from the face of the original specification to be a necessary, critical, or essential part of the invention, do not meet the original patent requirement of § 251.

## 2. The Reissue Claims in Question

We agree with the Board that the reissue claims in this case are not directed to the invention disclosed in the original patent and, therefore, do not meet the original patent requirement of § 251. Here, the original specification describes a single embodiment of the invention characterized as a float apparatus having a grill support including a plurality of magnets for safely and removably securing the grill to the float. The plurality of magnets component of the grill support structure, which has been eliminated in the reissue claims, is the only disclosed component for removably securing the grill to the support. It is not described in the original patent disclosure as optional, representative of removable fasteners generally, or

exemplary of a broader invention. Nor does the original disclosure include examples of alternative components or arrangements that might perform the functions of or operate in a similar manner to the disclosed plurality of magnets.

As the Board found, the plurality of magnets component of the support structure here is an essential part of the invention as it is the only disclosed structure for performing the necessary task of removably and safely securing the grill to the float apparatus. This conclusion is bolstered by the immutable fact that magnets are unique in facilitating the attachment of members merely by contact, as contrasted to nuts and bolts and other conventional fasteners that typically require multiple parts and more than one hand to assemble. Not only does the specification lack any disclosure or suggestion of an alternative fastener, but the one fastener disclosed is unlike any alternative that might even be considered. Here, the specification contains nothing to suggest to one of ordinary skill in the art that alternative mechanisms may be used in place of the plurality of magnets or that the plurality of magnets structure is a stand-in for a broader category of removable fasteners. To the contrary, the plurality of magnets is the only mechanism disclosed to fulfill the necessary functions of removably and safely securing the grill to the float.

This omission of the plurality of magnets here is similar to the omission of water in *U.S. Industrial Chemicals* and the omission of the plurality of arbors in *Forum*. In both cases, nothing in the original specifications clearly and unequivocally disclosed any alternative to perform the functions of the omitted element. Rather, just as the added water in *U.S. Industrial Chemicals* was "not designated as optional or desirable but described and claimed as an integral part of the whole operation," 315 U.S. at 677, and the specification in *Forum* "[did] not disclose an arbor-less embodiment of the invention," 926 F.3d at 1352, the plurality of magnets in FNG's specification was described in

definitional and necessary terms, '132 Patent at 3:18–21 ("The floating apparatus for supporting a grill 10 further includes a plurality of magnets 60 disposed within the middle segment 58 of the upper support[s]"); *id.* at 2:15–18 (similar); *id.* at 2:31–34 ("A flattened bottom side of a portable outdoor grill is removably securable to the plurality of magnets"); *id.* at 1:22–38 ("[W]hat has been needed is a plurality of magnets disposed within a middle segment of the upper support[s] . . . . A portable outdoor grill is removably securable to the plurality of magnets").

FNG argues that the plurality of magnets is simply a non-essential embodiment of the original patent, like the tapering of the metal tips in *Peters*. FNG argues that the disclosure in the original patent of removably securing the grill to the grill supports with a plurality of magnets is enough to support broadened reissue claims that recite removably securing the grill to the grill supports more generally, because one of ordinary skill in the art "would understand that it is unimportant how the floating apparatus supports the grill." Appellant's Opening Br. at 22–23 (noting disclosure in the prior art showing other means of securing a grill to a float).

We disagree. First, an express statement of criticality of an element in the original specification is not a prerequisite for a determination that that element is essential to the invention claimed in the original patent. There was no such statement of criticality of the arbors in *Forum* or the added water in *U.S. Industrial Chemicals*. Our court and the Supreme Court in those cases held that the limitations were critical because the inventions were described exclusively with the limitations later omitted, and an analysis of the relationship of those limitations to the functionality and disclosure of the original invention revealed their essential and critical nature. The same analysis reveals the essential and critical nature of the plurality of magnets here.

Second, whether ordinary artisans could replace the disclosed magnet mechanism with some other undisclosed mechanism to achieve a similar removably securable functionality, is inapposite.  The result of the procedure claimed in *U.S. Industrial Chemicals* was the same whether water was added or not, 315 U.S. at 677.  There, the Supreme Court explained that "even though the result attained is the same as that brought about by following the process claimed in the original patent," the omission "renders the reissue void," *id.* at 678.  *See also Forum*, 926 F.3d at 1352 ("Even if a person of ordinary skill in the art would understand that the newly claimed, arbor-less invention would be possible, that is insufficient to comply with the standard set forth in *Industrial Chemicals* and *Antares*.").

Third, the plurality of magnets component here is not like the tapered tips in *Peters*.  The omitted tapering limitation in *Peters* had no described functional role and its configuration was superficial at best.  The original specification in *Peters* comprehensively described the metal tips many times by characteristics and functions independent of their tapering.  U.S. Pat. No. 4,145,633 at 1:50–65 (tips should be as thin as possible so as not to obscure too much of the screen that they support); *id.* at 2:13–21 (tips must be prevented from transverse movement to maintain their orientation to the support wall); *id.* at 3:17–31 (tips have a "plurality of feet" for support and "thin, flexible web portions" to allow longitudinal movement); *id.* at 3:32–4:1 (tips include a retainer to permit longitudinal movement and a spring member to prevent lateral movement); *id.* at 4:1–3 (tips are compressed between two walls by atmospheric pressure).  The tapering characteristic, however, was never given functional importance.  *See Peters*, 723 F.2d at 894 ("The teaching of the patent . . . is not affected by whether the metal tips are tapered.").  This was the context for our statement in *Peters* that "nothing in the original disclosures indicates or suggests that the tapered shape of the tips was essential or critical to either the operation or

patentability of the invention." 723 F.2d at 893–94. The plurality of magnets limitation here, on the other hand, is in no way superficial, but is the one disclosed embodiment that fulfils the claimed removably securing function.

FNG repeatedly argues that because the reissue claims are broad enough to generically cover a float apparatus having a plurality of magnets, the original patent requirement of § 251 is met. What FNG fails to appreciate is that it is precisely because the reissue claims go beyond and are not limited to the plurality of magnets essential to the invention disclosed in the original patent that they fail to meet the requirement of § 251.

Finally, FNG argues that *Revolution Eyewear v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1366 (Fed. Cir. 2009) and *In re Rasmussen*, 650 F.2d 1212, 1215–16 (CCPA 1981) hold that if the original specification would have supported the reissue claim omitting the limitation, then the original patent requirement is satisfied. FNG is incorrect. In *Revolution Eyewear*, the court found that the original patent was satisfied "[b]ecause [it had just] held that the written description requirement [was] satisfied." *Id.* at 1367. In *Antares*, 771 F.3d at 1362 & n. 8, we explained that this analysis in *Revolution Eyewear* was a product of the parties' arguments and not a holding that satisfaction of written description therefore satisfies the original patent requirement. FNG's reliance on *In re Rasmussen* fares no better; that case too was analyzed in the context of written description and new matter, not the original patent requirement of § 251 as an independent basis for unpatentability of the reissue claims. *In re Rasmussen*, 650 F.3d at 1215–16.

## III. CONCLUSION

For the foregoing reasons, the Board did not err in affirming the rejection of reissue claims 4, 8, 10–14, and 17–22 for failure to satisfy the original patent requirement of § 251. Because this resolves the question of validity of all

the claims at issue on appeal, we need not and do not reach the issue of indefiniteness.

**AFFIRMED**